IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SERGIO J. BLASCO FIGUEROA,

**Plaintiff,**

v.                                              CIVIL NO. 14-1395 (GAG)

**PUERTO RICO AQUEDUCTS AND SEWER AUTHORITY,**

**Defendant.**

## OPINION AND ORDER

Plaintiff Sergio Blasco Figueroa ("Plaintiff") brings this action against his employer Puerto Rico Aqueducts and Sewer Authority ("PRASA") ("Defendant") alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and state claims alleging violations of Puerto Rico Law 44 of July 2, 1985, P.R. LAWS ANN. tit 1, § 501 *et seq.* ("Law 44"); and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 and 1803"), P.R. LAWS ANN. tit. 31, §§ 5141 and 5142. (Docket No. 1).

Presently before the Court is Defendant's motion for summary judgment arguing there is no evidence of discriminatory animus against Plaintiff, the alleged discriminatory actors had no knowledge that Plaintiff was disabled, and Plaintiff did not suffer an adverse employment action. (Docket No. 36.) Plaintiff opposed the motion (Docket No. 43) and Defendant replied. (Docket No. 50.) After reviewing these submissions and the pertinent law, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motion for Summary Judgment at Docket No. 36.

**Civil No. 14-1395 (GAG)**

## I. Relevant Factual and Procedural Background

Plaintiff Blasco began working with PRASA on March 31, 2006, as an Infrastructure Technology Manager in the Information Systems Department ("ISD"). (Docket Nos. 36-2 at 1 ¶¶ 1, 4; 43-1 at 1 ¶¶ 1, 4.) PRASA is a government-owned corporation that operates public water and wastewater systems on the island. (Docket Nos. 36-2 at 1 ¶ 2; 43-1 at 1 ¶ 2.)

The ISD, led by Director Hector Sanabria ("Sanabria"), consists of four areas: (1) Applications or Software; (2) Production and Operations; (3) Information Security, and (4) Help Desk. (Docket Nos. 36-2 at 2 ¶ 5-6; 43-1 at 2 ¶ 5-6.) Each area has its own Assistant Director, who reports to Sanabria, and staff that reports to the Assistant Director. (Docket Nos. 36-2 at 2 ¶ 7; 43-1 at 2 ¶ 7.) Plaintiff's direct supervisor is Carlos Díaz ("Díaz"), the Assistant Director of the Production and Operations area. (Docket Nos. 36-2 at 2 ¶ 8; 43-1 at 2 ¶ 8.)

The Productions and Operations area is sub-divided further into four areas with its own manager. (Docket Nos. 36-2 at 2 ¶ 9; 43-1 at 2 ¶ 9.) Plaintiff is the manager at the Infrastructure and Technology sub-area. (Docket Nos. 36-2 at 2 ¶ 9; 43-1 at 2 ¶ 9.) In his sub-area, Plaintiff supervises two communication specialists and a server specialist. (Docket Nos. 36-2 at 3 ¶ 13; 43-1 at 3 ¶ 13.) On June, 2010, PRASA assigned Plaintiff additional responsibilities, and by August, 2010 he was given a $500 salary adjustment. (Docket Nos. 43-1 at 10-11 ¶¶ 4-5; 50-1 at 12 ¶¶ 4-5.)

Plaintiff's sub-area is in charge of PRASA's communications system, including phones, cellphones and phone lines; communications between PRASA's remote offices, and the servers' baselines for all application installations. (Docket Nos. 36-2 at 2 ¶ 11; 43-1 at 2 ¶ 11.) His sub-area is also in charge of technical matters, and operating the Lotus Notes e-mail program. (Docket

**Civil No. 14-1395 (GAG)**

Nos. 36-2 at 3 ¶ 12; 43-1 at 3 ¶ 12.)  On May 2013, PRASCA authorized a $500.00 monthly stipend for the sub-specialists in Plaintiff's area.  (Docket Nos. 36-2 at 3 ¶ 15; 43-1 at 3 ¶ 15.)

On June 2013, Plaintiff was diagnosed with and treated for severe depression and severe psychosis, which form the basis of his disability discrimination claim.  (Docket Nos. 36-2 at 3 ¶ 16, 4 ¶ 22; 43-1 at 3 ¶ 16, 4 ¶ 22.)  He received treatment until March, 2014.  Id.  This condition did not prevent Plaintiff from performing the essential duties of his position.  (Docket Nos. 36-2 at 3 ¶ 17; 43-1 at 3 ¶ 17.)  Defendant maintains Plaintiff did not inform his supervisors Díaz and Sanabria of his specific medical condition, but Plaintiff provided a letter dated June 13, 2013, addressed to Díaz, and copying Sanabria, informing them that his emotional health had been affected.  (Docket Nos. 36-2 at 5 ¶ 30; 43-1 at 7 ¶ 30.)  In his deposition, Plaintiff admitted that he never spoke in detail about his condition to anyone at PRASA, including Díaz or Sanabria.  (Docket Nos. 36-2 at 5 ¶ 31; 43-1 at 7 ¶ 31.)  Plaintiff also testified that he told Díaz that if he wanted to know details about his condition, he had to ask the Human Resources ("HR") Department or the Employee Social Guidance Program.  Id.

In the June 13, 2013 letter, Plaintiff also mentioned that his supervisees had been awarded a $500 monthly stipend but he had not, he was subjected to a hostile work environment, his physical and emotional health had been affected, he did not have an office, and he was the victim of constant mockery by other employees.  (Docket Nos. 36-2 at 6 ¶ 34; 43-1 at 8 ¶ 34.)  In response to this letter, PRASA's HR Director Ruben Lugo, met not only with Plaintiff, but also with Díaz and Sanabria to discuss Plaintiff's concerns.  (Docket Nos. 36-2 at 6 ¶¶ 35-36; 43-1 at 8-9 ¶¶ 35-36.)  On June 21, 2013, Díaz informed Plaintiff that there was an office available for him.  (Docket Nos. 36-2 at 6 ¶ 37; 43-1 at 9 ¶ 37.)  As to the decision to give sub-area specialists a salary increase, Defendant asserts that it had already awarded Plaintiff a monthly $500 salary increase on August

**Civil No. 14-1395 (GAG)**

25, 2010, and he did not qualify for the salary increase in this instance. (Docket Nos. 36-2 at 6 ¶ 38; 43-1 at 9 ¶ 38.)

On July 13, 2013, Plaintiff requested to be transferred to "a similar occupation in another department with another supervisor" as a reasonable accommodation for his condition. (Docket Nos. 36-2 at 3 ¶ 18-19; 43-1 at 3-4 ¶ 18-19.) Plaintiff made his request through PRASA's Employee Social Guidance Program, which engaged the HR Department. (Docket Nos. 36-2 at 4 ¶ 20; 43-1 at 4 ¶ 20.) Employees from the Employee Social Guidance Program met with Plaintiff regarding his condition and request. (Docket Nos. 36-2 at 4 ¶ 22; 43-1 at 4 ¶ 22.) The HR Department responded by assessing other available positions given Plaintiff's educational background, personnel file, and experience. (Docket Nos. 36-2 at 4 ¶ 23; 43-1 at 4 ¶ 23.) Madeline Rodríguez ("Rodríguez") from the HR Department asked the Recruitment office to handle Plaintiff's request and to find other available positions for him. (Docket Nos. 36-2 at 4 ¶ 23; 43-1 at 4 ¶ 23.) According to the evaluation, Plaintiff qualified for two positions: (1) a Technology Manager (the position he currently held), and (2) a Service Supervisor. (Docket Nos. 36-2 at 4 ¶ 24; 43-1 at 5-6 ¶ 24.) Upon receipt of Plaintiff's evaluation results, Efraín Gaetán ("Gaetán") from the Employee Social Guidance Program returned the same to Roberto López of the Recruitment Office because according to him, the evaluation did not include all the available positions for which Plaintiff could qualify pursuant to PRASA regulations. (Docket Nos. 36-2 at 4 ¶ 23; 43-1 at 4 ¶ 23.)

From July 3, 2013 until July 12, 2013, Plaintiff was interned at the First Hospital Panamericano for his condition. (Docket No. 36-4 at 6.) On July 17, 2013, Díaz announced to Plaintiff that he had removed the administration of Lotus Notes to the Information Security area and out of Plaintiff's control. (Docket Nos. 36-2 at 6 ¶ 39; 43-1 at 9 ¶ 39.) The Information

Security area was already responsible for evaluating, creating and defining access to the information system. (Docket Nos. 36-2 at 6 ¶ 40; 43-1 at 9 ¶ 40.) Díaz maintains the decision to remove the administration of Lotus Notes from Plaintiff's control was made prior to July 2013. (Docket Nos. 36-2 at 6 ¶ 40; 43-1 at 9 ¶ 40.)

On September 27, 2013, HR Director Rodriguez submitted Plaintiff's reasonable accommodation request, which stated that Plaintiff would be referred to Universal Medical Option for a medical evaluation. (Docket Nos. 43-1 at 12 ¶ 20; 50-1 at 15 ¶ 20.) Plaintiff testified PRASA never referred him to a medical consultant. (Docket Nos. 43-1 at 12 ¶ 20; 50-1 at 15 ¶ 20.) On November 18, 2013, Gaetán and Rodríguez met with Plaintiff to explain the available alternatives for his reasonable accommodation request. (Docket Nos. 36-2 at 4 ¶ 25; 43-1 at 6 ¶ 25.) Plaintiff declined the Service Supervisor position because it was a demotion, and at that time there was no vacancy for a Service Supervisor in the Region or at the Headquarters. (Docket No. 43-1 at 5-6 ¶ 24.) Alternately, Plaintiff was offered to take a leave of absence, but he declined stating that it was not a viable alternative to his request. (Docket Nos. 36-2 at 5 ¶ 27; 43-1 at 6 ¶ 27.)

On February 12, 2014, Plaintiff filed a charge of disability with discrimination with the Equal Employment Opportunity Office ("EEOC"). (Docket Nos. 36-2 at 7 ¶ 41; 43-1 at 10 ¶ 41.)

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it

**Civil No. 14-1395 (GAG)**

'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" <u>Iverson v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. <u>Celotex</u>, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. <u>See Anderson</u>, 477 U.S. at 248.

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. <u>Id.</u> at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. <u>Id.</u> Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." <u>Forestier Fradera v. Mun. of Mayaguez</u>, 440 F.3d 17, 21 (1st Cir. 2006) (quoting <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)).

**III. Legal Analysis**

In its motion for summary judgment, Defendant argues that Plaintiff's claims fail as matter of law because there is no evidence of causation or discriminatory animus, the alleged

6

**Civil No. 14-1395 (GAG)**

discriminatory actors had no knowledge of Plaintiff's medical condition, Plaintiff has not suffered an adverse employment action, Plaintiff's accommodation request was unreasonable, and even after Defendant offered Plaintiff a reasonable accommodation, he rejected it. (Docket No. 36-1 at 3-4.) The court will analyze each argument in turn.

### A. ADA: Discrimination Claim

The ADA prohibits discrimination against a qualified individual with a disability by reason of the individual's disability. See 42 U.S.C. § 12112(a). A qualified individual is, "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. at § 12111(8). The First Circuit requires Plaintiff to prove three factors by a preponderance of the evidence in order to make a *prima facie* case of discrimination under the ADA: that "(1) [he] was disabled within the meaning of the ADA; (2) [he] was qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) the employer took an adverse employment action against [him] because of the alleged disability." Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 32 (1st Cir. 2011) (citations omitted). Plaintiff's failure to meet any of the three *prima facie* elements is dispositive of the entire claim.[1] See Mulloy v. Acushnet Co., 460 F.3d 141, 154 n. 8 (1st Cir. 2006).

#### i. Adverse Employment Action

Defendant argues that Plaintiff fails to establish the third element because Plaintiff did not suffer an adverse employment action, and in the alternative, Plaintiff has failed to show that

---

[1] However, if the plaintiff succeeds in establishing a *prima facie* case, the presumption arises that the employer unlawfully discriminated against plaintiff and the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory basis for its adverse employment action. See Laurin v. Providence Hosp., 150 F.3d 52, 58 (1st Cir. 1998). If the defendant is able to meet its burden, "the plaintiff . . . must show that the defendant's articulated reason is pretextual." Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007) (citations omitted).

**Civil No. 14-1395 (GAG)**

Defendant discriminated against him because of his disability. (Docket No. 36-1 at 7.) In order to satisfy the third element, Plaintiff must show that an adverse employment action occurred, and that a causal connection exists between the adverse employment action and the disability. See Katz v. City Metal Co., Inc., 87 F.3d 26, 33 (1st Cir. 1996).

For an action to be adverse, it "must materially change the conditions of plaintiff['s] employment." Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002); Castro-Medina v. Procter & Gamble Commercial Co., 565 F. Supp. 2d 343, 371 (D.P.R. 2008). Whether a change is adverse is based on an objective standard. Marrero v. Goya of P.R., 304 F.3d 7, 23 (1st Cir. 2002). "Material changes include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.'" Gu, 312 F.3d at 14 (quoting Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)). A "reassignment that involves only minor changes in working conditions normally does not constitute an adverse employment action." Marrero, 304 F.3d at 23. Likewise, a lateral transfer or shift change "that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Id. (quotations omitted).

In the present case, Plaintiff offered no proof that he was materially disadvantaged with respect to his salary, grade or other objective terms and conditions of employment, or that the alleged adverse employment actions were, in whole or in part, because of his disability. At the time Plaintiff filed the complaint he was employed as an Information Systems Technology Manager at PRASA, a position he continues to hold to this day. Plaintiff instead contends that he has met his burden to show an adverse employment action presenting evidence that he lacked office space, that PRASA removed the Lotus Notes e-mail program from his responsibilities after

learning of his disability, and that his staff received a salary increase but he did not. Pursuant to the applicable law, none of these allegations rises to the level of an adverse employment action.

First, Defendant provided Plaintiff with an office a week after he requested it. Second, Plaintiff's sub-area is still in charge of PRASA's communications system, including phones, cellphones and phone lines; communications between PRASA's remote offices, and the servers' baselines for all application installations, coupled with dealing with other relevant technical matters. In regards to the decision to take away the Lotus Notes program, Plaintiff has not shown how it materially affected the terms of his employment in light of all his other responsibilities. Lastly, his sub-specialists receiving a salary increase does not rise to the level of an adverse employment action, given that Plaintiff has not provided any evidence that he was entitled to the same raise.

Even if Plaintiff could establish that such actions constitute adverse employment actions, he failed to proffer any evidence that Defendant took those decisions because of his disability. A plaintiff can establish causation by proving that "his disability was a motivating factor" in the employer's decision to take the alleged adverse employment action. <u>Katz</u>, 87 F.3d at 33. It is undisputed that Plaintiff was diagnosed sometime in June, 2013. Plaintiff also admitted that he never informed Díaz or Sanabria about his condition, and instead told them to ask the HR Department if they wanted more details. Thus, Plaintiff merely relies on his June 13, 2013 letter to Díaz, copying Sanabria, where he mentions that his emotional health is being affected by the situation at work. Even if the Court were to construe this letter as effectively notifying Díaz or Sanabria about Plaintiff's mental disability, he has failed to show a causal connection between that notification and the adverse employment actions. In that letter, Plaintiff complained both about the office and his supervisees' salary increase, and at the same time notified his supervisors that his

9

**Civil No. 14-1395 (GAG)**

emotional health had been affected.  Thus, Defendant's failure to provide Plaintiff with an office and the decision to give the sub-specialists a raise could not be because they knew of his mental disability. Defendant also presented undisputed evidence that the decision to take away the Lotus Notes program from Plaintiff's sub-area was taken several months before Plaintiff was diagnosed with his condition.  Díaz also provided uncontroverted testimony that he was not aware of Plaintiff's health condition when he took the decision to transfer the Lotus Notes program to the Information Security Area.

Thus, there is no genuine dispute as to any material fact.  Plaintiff has failed to establish his *prima facie* case of disability discrimination, and judgment is appropriate as a matter of law. Defendant's motion for summary judgment as to this claim is **GRANTED**.

    B.  ADA: Failure to Accommodate Claim

An employer may also violate the ADA if it knows of an employee's disability, yet fails to make reasonable accommodations for said employee.  Estades Negroni v. Associates Corp. Of North America, 377 F.3d 58, 63 (1st Cir. 2004).  The ADA imposes liability for an employer's failure to accommodate an employee's "known physical or mental limitations" unless the accommodation would impose an undue hardship on the operation of the business.  42 U.S.C. § 12112(b)(5)(A); see also Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999).  What constitutes a reasonable accommodation is a fact-driven analysis made on a case-by-case basis, but generally may include making the workplace accessible and usable to disabled employees, modifying work schedules, re-assigning to a vacant position, or providing additional unpaid leave for necessary treatment.  See 42 U.S.C. § 12111(9); see also García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647 (1st Cir. 2000) (courts must "giv[e] the type of individual assessment of the facts that the Act and the case law requires.").

**Civil No. 14-1395 (GAG)**

To survive summary judgment on her reasonable accommodation claim, Plaintiff must "produce enough evidence for a reasonable jury to find that: (1) he is disabled within the meaning of the ADA; (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) that [defendant], despite knowing of [his] disability, did not reasonably accommodate it."  Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003). Ordinarily, the employer's duty to accommodate is triggered by a request from the employee. Freadman v. Metropolitan Property and Cas. Ins. Co., 484 F.3d 91, 102-03 (1st Cir. 2007) (citing Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001)).  Plaintiff must also establish that the requested accommodation is reasonable, "would enable [him] to perform the essential functions of [his] job," and that the request is feasible for the employer under the circumstances. Id.; see also U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-02 (2002); Mulloy v. Acushnet Co., 460 F.3d 141, 148 (1st Cir. 2006).  Once made, Defendant has the opportunity to show that the proposed accommodation would impose an undue hardship.  Reed, 244 F.3d at 259; Barnett, 535 U.S. at 402.

In this case, Plaintiff requested a reasonable accommodation in the form of a transfer from his current position.  Defendant argues that it has effectively complied with the ADA requirements because it offered Plaintiff options in regards to his request, which Plaintiff declined.  However, the Court notes that "[t]he duty to provide reasonable accommodation is a continuing one . . . and not exhausted by one effort."  Criado v. IBM Corp., 145 F.3d 437, 444-45 (1st Cir. 1998) (quotations omitted); see also 29 C.F.R. § 1630.2(*o*) (1)(iii) ("it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual.").  An employer can very well violate the ADA if it failed to engage in an informal interactive process with the

11

employee to find a reasonable accommodation. See Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 515 (1st Cir. 1996).

Defendant met with Plaintiff to discuss his options, then referred his file to the Recruitment Office to determine which additional positions Plaintiff could qualify for. The HR Department concluded that Plaintiff qualified for the position of Technology Manager, which is the position he held at that moment, and the position of Service Supervisor, which was a demotion. Furthermore, when Defendant met with Plaintiff to discuss his reasonable accommodation request, Defendant explained that they did not have a vacancy for the Services Supervisor position in the Region or at the headquarters. Additionally, Defendant stated that Plaintiff would be referred externally to receive a medical evaluation, but Plaintiff was never provided with one.

Genuine issues of material fact remain as to whether Defendant failed to engage with Plaintiff in the required interactive process as required by law. The evidence shows Defendant only met with Plaintiff once to discuss job opportunities, took more than four months to provide him with a resolution to his request, and when they did provide him with options one of them was to take a leave of absence, and the other was to take a demotion for which there was not even a vacancy available. Additionally, Gaetán from the Employee Social Guidance Program returned the proposed evaluation results to the Recruitment Office, asserting that it was missing viable options for Plaintiff's transfer request according to PRASA's regulations. These issues of fact preclude summary judgment. Defendant's motion for summary judgment as to Plaintiff's failure to accommodate claim is **DENIED**.

C. ADA: Hostile Work Environment Claim

Hostile work environment claims brought under the ADA are analyzed using the standards applied to similar claims brought under Title VII. Civil Rights Act of 1964, § 701 *et seq.*, 42

**Civil No. 14-1395 (GAG)**

U.S.C. § 2000e *et seq.*; ADA of 1990, § 2, 42 U.S.C. § 12101; see Rodriguez v. Loctite Puerto Rico, Inc., 967 F. Supp. 653, 662 (D.P.R. 1997). The Title VII standard requires an employee to prove that: (1) he was disabled within the meaning of the Act; (2) he was subject to unwelcome harassment because of the disability; (3) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (4) the employer knew or should have known about the harassment but failed to take prompt remedial action. Id.; Castro-Medina v. Procter & Gamble Commercial Co., 565 F. Supp. 2d 343, 377-78 (D.P.R. 1997).

Defendant argues that Plaintiff has failed to show that any harassment was based on his disability, or that it affected the terms of his employment because it was sufficiently severe or pervasive. Plaintiff bases his hostile work environment claim on the following allegations: (1) Díaz told him he always had a problem with something; (2) Sanabria treated him in a hostile manner on multiple occasions; (3) every time he walks into Díaz's office tells him to "bark"; (4) Díaz yelled at him in front of contractors and employees and told him to "learn how to speak like people"; (5) both Díaz and Sanabria gave instructions to Plaintiff's sub-specialists without notifying him; (6) Sanabria treated other employees and contractors in a hostile manner; (7) PRASA decided to award Plaintiff's sub-specialist a differential bonus, but declined to award him the same. (See Docket Nos. 43 at 13-15; 36-19 at 4.)

Plaintiff's hostile work environment claim fails in multiple respects. First, most if not all of Plaintiff's allegations in support of this claim, occurred before he was diagnosed with his condition in June, 2013. "In addition to proving the severity of the harassment, the plaintiff must show . . . that the harassment was *based on the disability*." Id. (emphasis added). Necessarily, any alleged discriminatory treatment that happened before he was diagnosed with depression and psychosis cannot form the basis of his hostile work environment claim. Plaintiff's claim suffers

13

**Civil No. 14-1395 (GAG)**

the same deficiency as the Court previously discussed in his ADA discrimination claim.  Although he has cited numerous acts of alleged discriminatory treatment, he has failed to link these actions to any disability-based animus.

Second, not all types of harassment are actionable.  Plaintiff must prove that the harassment was so severe and pervasive that it affected his employment, and created an abusive environment at work.  Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006).  In analyzing this claim, courts must look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Valentin-Almeyda, 447 F.3d at 94.  Offhand remarks, simple teasing, tepid jokes, and isolated incidents are not actionable.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  Although this analysis is fact-specific and generally left to the fact-finder, "summary judgment is an appropriate vehicle for policing the baseline for hostile environment claims." Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006).  In this case, Plaintiff's allegations are not severe or pervasive enough to constitute a hostile or abusive workplace.  Plaintiff's stated facts might show a tense working situation with both of his supervisors; however, it is clearly-established that "a supervisor's unprofessional managerial approach and accompanying efforts to assert her authority are not the focus of the discrimination laws." Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 46-47 (1st Cir. 2003).  Although Plaintiff points to several instances of verbal confrontations between him and his supervisors, he has failed to show how any of these instances altered the condition of his employment.

**Civil No. 14-1395 (GAG)**

Thus, there is no genuine dispute as to any material fact. Plaintiff has failed to establish the alleged harassment was severe or pervasive, or that it was based on his disability. The Court **GRANTS** Defendant's motion for summary judgment as to this claim.

 D. State Law Claims

Law 44 is the state law version of the federal ADA statute. The elements of a Law 44 claim are essentially the same as an ADA claim. See Perez Montero v. CPC Logistics, Inc., 536 F. Supp. 2d 135, 145 (D.P.R. 2008). Having been modeled after the ADA, Law 44 also requires Defendants to provide disabled individuals with reasonable accommodations to perform their work duties. See id. While the Court granted Defendant's motion for summary judgment as to Plaintiff's ADA disability discrimination claim, Plaintiff may still rely on his failure to accommodate claim to bring forth a similar cause of action under Law 44. Thus, the Court **DENIES** Defendant's motion for summary judgment in so far as it is based on Defendant's failure to provide reasonable accommodations.

Lastly, Plaintiff's Article 1802 and 1803 claims are not cognizable because it arises from the same facts as Plaintiff's claims under the ADA and Law 44. (See Docket No. 1 at 2-3.) The Supreme Court of Puerto Rico has held that "[a]s a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802." Reyes-Ortiz v. McConnell Valdes, 714 F. Supp. 2d 234, 239 (D.P.R. 2010) (quotations omitted). A plaintiff may only bring an additional Article 1802 claim if it is based on tortious or negligent conduct that is distinct from the conduct covered by the specific labor law. Id. (citations omitted). Plaintiff is barred from bringing claims under Article 1802 because the conduct he alleges is based on the same facts that give rise to Plaintiff's causes of action under Puerto Rico's

15

**Civil No. 14-1395 (GAG)**

discrimination statute. Therefore, Defendant's motion for summary judgment as to Plaintiff's 1802 and 1803 claims is **GRANTED**.

### IV. <u>Conclusion</u>

For the reasons stated above, the Court hereby **DENIES** Defendant's motion for summary judgment as to Plaintiff's failure to accommodate claim under the ADA and Law 44. The Court hereby **GRANTS** Defendant's motion for summary judgment as to Plaintiff's disability discrimination and hostile work environment claims under the ADA, and Plaintiff's 1802 and 1803 claims.

This case is hereby referred to Magistrate Judge Bruce McGiverin for the holding of a pre-trial/settlement conference. The parties shall file a *joint*, proposed pre-trial order on or before April 25, 2016. The parties shall engage in further, good-faith negotiations prior to the conference, as Judge McGiverin may issue any other settlement directives. The Court hopes that the instant ruling will aid the parties in reaching an acceptable compromise that will end this litigation.

**SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of March, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge